[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13324

Non-Argument Calendar

_____

LISA JENSEN,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:20-cv-60987-RAR

_____

Before JORDAN, ROSENBAUM, AND NEWSOM, Circuit Judges.

PER CURIAM:

Lisa Jensen appeals the district court's order affirming the decision of the Commissioner of the Social Security Administration ("Commissioner") to deny her application for a period of disability and disability insurance benefits (collectively, "disability benefits"). On appeal, she contends that the administrative law judge failed to adequately explain his decision not to include a sit-stand option, failed to consider her need to recline and lie down during the day, and selectively credited examination findings to fit the unfavorable decision. She also contends that substantial evidence does not support the ALJ's conclusion that her subjective complaints of disabling symptoms were not entirely consistent with the medical and other evidence of record.

## I.

Jensen applied for disability benefits in June 2015, alleging that she became disabled on June 1, 2014, when she was 59 years old, due mainly to right hip and lower back impairments. After a hearing, an ALJ issued an unfavorable decision in March 2018, concluding that Jensen was not disabled from the onset date to the date last insured of December 13, 2017.

Jensen requested review of the ALJ's decision and submitted additional medical records. The new evidence included MRIs of Jensen's right hip and lower back, which were taken in March 2018.

The MRI of her right hip indicated moderate to severe right hip osteoarthritis, ganglion and synovial cysts in her joint, a degenerative hip labral tear with paralabral cyst, and a cam deformity suggesting femoral acetabular impingement.  These results were consistent with earlier x-rays showing moderate to severe osteoarthritis of the right hip, which had been found in physical examinations to significantly restrict Jensen's range of motion.  The MRI report of her lumbar spine indicated moderate to severe left foramina stenosis and compression of the L4 nerve root, moderate bilateral foramina stenosis and mild compression of the L4 and L5 nerve roots, and central disc herniation at L5 to S1 compressing the thecal sac.

In January 2019, the Appeals Council granted review, vacated the ALJ's decision, and remanded the case to consider the new medical evidence, obtain additional evidence concerning Jensen's musculoskeletal impairments, and further consider her maximum residual functional capacity ("RFC") and provide appropriate rationale for the assessed limitations.

On remand, the ALJ arranged for an examination by a consulting physician, Roland Kaplan, D.O.  In his May 2019 examination, Dr. Kaplan found that Jensen walked with an "antalgic gait favoring the right lower extremity" and had significant restriction of range of motion in her right hip.  He also noted that x-rays showed a "high moderate amount of osteophytic changes in the right hip"—bone spurs, in other words—consistent with her symptomatology and degenerative changes at multiple levels in the lumbar spine.  He assessed her with lumbar herniated disc, lumbar

spinal stenosis, and osteoarthritis of the right hip. In addition, Dr. Kaplan prepared a medical source statement, opining in part that, in an eight-hour workday, Jenson could sit for a total of four hours and for one hour at a time, stand for a total of two hours and thirty minutes at a time, and walk for a total of two hours and thirty minutes at a time.

Then, in October 2019, Jensen appeared with counsel and testified at the remand hearing before the same ALJ. A vocational expert also testified at the hearing. In November 2019, the ALJ issued a second unfavorable decision, concluding that Jensen had the RFC to perform sedentary work[1] with certain additional limitations not relevant here, and could perform past relevant work as a legal secretary or mortgage clerk.

In explaining his decision, the ALJ found that Jensen had several severe impairments, including "osteoarthritis of the hips more so on the right," generalized osteoarthritis, and "degenerative disc disease lumbar spine with stenosis." Although the ALJ found that these impairments could reasonably be expected to cause the alleged symptoms, he found that her statements about the severity

---

[1] According to the relevant regulation, "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

of her symptoms were not entirely consistent with the record as a whole.

After summarizing most of Jensen's medical records, the ALJ turned to Dr. Kaplan's opinion, stating that it was "largely consistent" with the ALJ's RFC. But the ALJ explained that he found it "more appropriate[] to limit the claimant to sedentary work given the standing and walking involved." As a result, in the ALJ's view, Jensen "would not need further limitations." The ALJ stated that, "[i]n the most recent medical evidence, the claimant had no spine tenderness along with a normal gait," and that, "[e]arlier in the evidence it was noted the claimant [had] normal range of motion and her gait and station were unremarkable." The ALJ also cited Jensen's testimony that she left her last job—in May 2012—because she was laid off and not due to physical problems, "which would support the finding that she could perform sedentary work."

The ALJ also gave "partial weight" to the opinions of the state agency physicians who initially reviewed Jensen's applications. He disagreed with these physicians that Jensen could perform light work, but he again noted that examination findings of "having unremarkable gait and station" and a "normal gait with no spine tenderness" supported the assessed RFC.

The ALJ concluded,

> While the MRIs and x-rays showed the claimant to have osteoarthritis of the hip along with nerve root impingement and herniation and disc protrusion in

the lumbar, the physical examination note[d] the claimant had an unremarkable gait and station and [was] later found to have a normal gait. I [therefore] conclude[] the claimant's subjective complaints and alleged limitations are not fully persuasive and that she retains the capacity to perform work activities with the limitations as set forth above.

This time, the Appeals Council denied review of the ALJ's decision. Jensen then sought judicial review in federal district court. *See* 42 U.S.C. § 405(g). Based on a magistrate judge's report and recommendation, to which Jensen timely submitted objections, the district court affirmed the agency's decision. Jensen now appeals to this Court.

## II.

"In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). We must affirm a decision that is supported by substantial evidence even if the evidence preponderates against the agency's findings. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007). And we may not reweigh the evidence,

decide the facts anew, or substitute our judgment for that of the ALJ. *Winschel*, 631 F.3d at 1178.

But deference does not mean abdication. We have an obligation to "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). A decision is not supported by substantial evidence if the ALJ "reached the result that [he] did by focusing upon one aspect of the evidence and ignoring other parts of the record." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) ("It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence."). The ALJ also must state with at least some measure of clarity the grounds for his decision, which guides our review, and we will not affirm "simply because some rationale might have supported the ALJ's conclusions." *Winschel*, 631 F.3d at 1179.

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). Regulations outline a five-step, sequential evaluation process ALJs must use to determine whether a claimant is disabled: (1) whether she is currently engaged in substantial gainful activity; (2) whether she has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of a specified impairment in the Listing of Impairments; (4) whether she can perform her past relevant work despite

her impairments; and (5) whether, if past relevant work is precluded by her impairments, she can perform other work found in the national economy. *Winschel*, 631 F.3d at 1178; *see* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

At step four of the sequential analysis, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). The RFC is an assessment of a claimant's ability to do work despite her impairments. *Lewis*, 125 F.3d at 1440. Relevant evidence includes a claimant's medical history, medical signs, laboratory findings, and statements about how the symptoms affect the claimant. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

## III.

We conclude that the ALJ's decision is not supported by substantial evidence. The ALJ's rationale reflects a selective reading of the record and does not adequately support his ultimate conclusions. To the extent the Commissioner offers a viable rationale to uphold the ALJ's decision, we cannot affirm "simply because some rationale might have supported the ALJ's conclusions." *Winschel*, 631 F.3d at 1179.

Key to the ALJ's adverse November 2019 decision were treatment notes reflecting Jensen's normal gait and station and lack of spine tenderness. *See* ALJ Decision at 22 ("In the most recent medical evidence, the claimant had no spine tenderness along with a normal gait."; "Earlier in the evidence it was noted the claimant

to have normal range of motion and her gait and station were unremarkable."; "[T]he claimant's physical examination of having unremarkable gait and station and later having a normal gait with no spine tenderness would support the findings."; "[T]he physical examination note[d] the claimant had an unremarkable gait and station and later found to have a normal gait."). Yet the ALJ failed to reconcile these observations—which largely occurred in the context of visits unrelated to her back or hip impairments—with other contrary evidence, or even to address some of that evidence.

For starters, it's not accurate to say that the "most recent medical evidence" shows a normal gait. The record shows that Dr. Kaplan conducted a physical examination in May 2019 and found that Jensen walked with an "antalgic gait favoring the right lower extremity" and had significant restriction of range of motion in her right hip. This examination post-dated the examinations cited by the ALJ, and it is consistent with earlier findings that Jensen had decreased range of motion with pain in her right hip.

What's more, the ALJ did not explain why Jensen's normal gait and station indicated that her hip and back impairments were not as severe as she asserted or undermined Dr. Kaplan's opinions. Treatment notes from a visit to the Orthopaedic Center of South Florida on June 22, 2015, which are notably absent from the ALJ's discussion of the medical evidence, reflect that Jensen had a "normal" gait and standing alignment and no tenderness. Still, according to the doctor who prepared the notes, Jensen had "arthroplasty level symptoms" "consistent with end-stage degenerative arthrosis

of the joint," which had caused "significant functional limitations" that had not improved despite "numerous nonoperative interventions." As a result, total hip replacement surgery was recommended—though ultimately not performed, as far as the record shows.

As we stated in *McCruter*, "[i]t is not enough to discover a piece of evidence which supports th[e] decision"—here, the evidence of Jensen's normal gait and station—"but to disregard other contrary evidence." 791 F.2d at 1548. While the ALJ noted that imaging results since that time have confirmed that Jensen suffers from moderate to severe osteoarthritis of the right hip with nerve root impingement, it failed to explain the significance it attached to her "normal" gait or how it related to the pain Jensen allegedly experienced during prolonged periods of sitting. *See id.* ("The review must take into account and evaluate the record as a whole.").

Nor do we agree with the ALJ's statement that limiting Jensen to sedentary work adequately accounted for Dr. Kaplan's opinions. While the ALJ's RFC appears to be more restrictive than Dr. Kaplan's opinions with regard to the total length of time Jensen could stand or walk in a workday, it did not incorporate his views as to the total length of time Jensen could sit or the length of time she could sit, stand, or walk at any one time. Dr. Kaplan opined that Jensen could sit for no more than four hours in an eight-hour workday. Limiting her to sedentary work, which largely "involves sitting," seems to contradict that assessment. The ALJ also did not

include the type of "sit/stand" option[2] he had adopted in the original adverse decision, which would have been broadly consistent with Dr. Kaplan's views as to Jensen's inability to remain in a constant position for any length of time. Likewise, Jensen's testimony reflects that, due to severe and persistent pain, she was unable to sit for long without getting up and walking around, sitting in a recliner with an ice pack for between twenty minutes and an hour, or lying in bed.[3] We do not express or imply any view that the ALJ was required to credit Dr. Kaplan's opinions regarding Jensen's functional limitations. But on the current record, we cannot reconcile the ALJ's generally favorable statements regarding Dr. Kaplan's evaluation with the limitations imposed.

Finally, we cannot say Jensen's testimony about the circumstances of leaving her last job reasonably supports the ALJ's decision. The ALJ found that Jensen's testimony that she did not leave her last job for physical problems, but rather was laid off to make room for a returning employee, "would support the finding that she could perform sedentary work." But Jensen testified that she was let go from her position in May 2012, more than two years

---

[2] In the original unfavorable decision, the ALJ included a "sit stand option defined as a brief positional change from sitting to standing and vice versa with no more than one change in position every 20 minutes and without leaving the workstation so as not to diminish pace or production."

[3] The vocational expert indicated that that there would be no jobs for a person who required three additional breaks, up to 15 minutes, during a typical workday, or for a person who had to recline 80 percent of the day.

before the alleged onset of disability.  That Jensen could work before she allegedly became disabled is hardly surprising, and it says little if anything, at least without further elaboration, about the period in question.  We also note that Jensen testified she attempted to look for work after being laid off but "the pain got so bad that [she] couldn't even sit in front of a computer while [she] was . . . searching and applying for jobs."

Having carefully reviewed the record as a whole and the rationale provided by the ALJ, we conclude that substantial evidence does not support the ALJ's decision based on the rationale provided.  *See Winschel*, 631 F.3d at 1179.  We therefore vacate the judgment of the district court and remand with instructions to remand this case to the Commissioner for further proceedings regarding Jensen's eligibility for disability benefits.

**VACATED AND REMANDED, with instructions.**